FILED

1  Yuki Kobayashi
   1526 3rd Ave #7
2  Los Angeles, CA 90019
   Phone: (323)734-4815
3  Plaintiff

2019 JUL 30  PM 1: 27

CLERK U.S. DISTRICT COURT
CENTRAL DIST OF CALIF.
LOS ANGELES

BY:

5  UNITED STATES DISTRICT COURT
   CENTRAL DISTRICT OF CALIFORNIA

7  Yuki Kobayashi;                          )
                    Plaintiff.              ) Case No.
   vs.                                      )  CV19 - 06591 - DOC-MAA
8                                           )
   Morgan McMullin,                         ) Complaint for emergency restraining order,
9  Yeshia Braverman, AKA Shaya Braverman,   )   preliminary injunction, permanent injunction,
   Bacilio (40014), Gamel (41804), Sgt. Cook (38984), )   declaratory relief, and damages for civil rights
10 Doe1, Doe2, Romain (42814), Herbert (42799), )   and other violations;
   Shuck (40740), Torres (43383), Sgt. Cuevas (36986), )
11 Doe3, Doe4, Magi, Doe5, Doe6, Hailey Linderwood, )
   Sherra Buenafe, Veronica Cervantes, Doe7, Doe8, )
12 Steven Berger, Thomas Mead,              )
   Juliana Romeu, Elena I. Popp, Doe9, Doe10 )
13 (all these individual defendants are sued in both individual )
   and official capacities),                ) Jury Trial Demanded,
14 City of Los Angeles (public entity),     )
   La Brea Rehabilitation Center, LLC (limited liability company), )
15 and Eviction Defense Network (corporation); )
                    Defendants.             )

PAID

JUL 3 0 2019

Clerk, US District Court
COURT 4612

16  I. JURISDICTION

17      1. This court has jurisdiction under 28 U.S.C. 1331, 1343, 2201, 2202, 42 U.S.C. 3613, and supplemental

18  jurisdiction under 28 U.S.C. 1367 over state law claims.

20  II. VENUE

21      2. Venue is proper pursuant to U.S.C. 1391(b) and (c). All the claims arose within the jurisdiction of this

22  judicial district and involve Defendants who reside within the jurisdictional boundaries.

24  III. PARTIES

25      3. Plaintiff Yuki Kobayashi is and was, at all times relevant to this complaint, a resident and citizen of the

26  city of Los Angeles, County of Los Angles, California, and a member of Japanese and Asian race.

27      4. Defendant Morgan McMullin is and was, at all relevant times, a licensed real estate agent, a resident of

28  City of Los Angeles, Los Angeles County, California, and claimed to be an owner or the trustee of the McMullin

Living Trust to manage the 2-bedroom apartment located at 1338 2nd Avenue, Los Angeles, California 90019 as an owner, landlord, manager, agent, servant or employee of the trust, and is sued individually as well as in his official capacities as a real estate agent and the trustee of the McMullin Living Trust.

5. Defendant Yeshia Braverman, AKA Shaya Braverman, is and was, at all relevant times, a duly commissioned, qualified, and acting notary public for the State of California, a licensed real estate agent, and a resident of the City of Los Angeles, Los Angeles County, California, and is sued individually as well as in his official capacity.

6.a) Defendant City of Los Angels is and was, at all relevant times, a municipality organized by and through the State of California.

b) Defendants Bacilio (40014), Gamel (41804), Sgt. Cook (38984), Doe1, Doe2, Romain (42814), Herbert (42799), Shuck (40740), Torres (43383), and Sgt. Cuevas (36986), were, at all relevant times, police officers employed by defendant City of Los Angeles, were acting as the agents, servants, and/or employees of defendant City of Los Angeles within the course and scope of their employment, and are sued individually as well as in their official capacity. Defendants Doe1 and Doe2 are fictitious names whose true names are currently unknown and undiscoverable by plaintiff. Plaintiff will amend this complaint to state their true names when ascertained.

7.a) Defendant La Brea Rehabilitation Center, LLC, (Rehabilitation Center) is and was, at all relevant times, a limited liability company doing a skilled nursing home business organized and existing under the laws of the State of California, having its principal place of business at 505 N. La Brea Avenue, Los Angeles, County of Los Angeles, California 90036.

b) At all relevant times, defendants Steven Berger and Thomas Mead were the manager and the administrator, respectively, and defendants Doe3, Doe4, Magi, Doe5, Doe6, Hailey Linderwood, Sherra Buenafe, Veronica Cervantes, Doe7, and Doe8, were workers, agents, and/or servants, all employed by defendant La Brea Rehabilitation Center. All these defendants were acting within the course and scope of their employment, and are sued individually as well as in their official capacity. Defendants Doe3 through Doe8 are fictitious names whose true names are currently unknown and undiscoverable by plaintiff. Plaintiff will amend this complaint to state their true names when ascertained.

8.a) Defendant Eviction Defense Network is and was, at all relevant times, a non-profit corporation organized and existing under the laws of the State of California, having its principal place of business at 1930

1  Wilshire Blvd., #208, Los Angeles, County of Los Angeles, California 90057.

2      b) Defendants Juliana Romeu and Elena I. Popp were, at all relevant times, attorneys, workers, agents,

3  and/or servants employed by defendant Eviction Defense Network, were acting within the course and scope of

4  their employment, and are sued individually as well as in their official capacity.

5      9. Defendants Doe9 and Doe10 are fictitious names whose true names and capacities are currently

6  unknown and undiscoverable by plaintiff. Plaintiff will amend this complaint to state their true names and

7  capacities when ascertained.

8

9  IV. STATEMENT OF FACTS

10     10. Mrs. Kiyoko Nakano, an 86 years old, elder Japanese lady, and her husband, who deceased in 2015,

11  were the original tenants of the 2-bedroom apartment located at 1338 2nd Ave, Los Angeles, CA 90019.

12     11. In or about April of 2017, plaintiff visited Mrs. Nakano, who was living alone in the apartment, and

13  found three "3-Day Notice to Pay or Quit" documents inside the apartment. It was apparent that Mrs. Nakano was

14  no longer able to fill out a bank check in correct English and thus defendant McMullin as landlord or its agent

15  mailed to Mrs. Nakano those 3-day notices demanding immediate payment of 3 month back rents.

16     12. Mrs. Nakano also had difficulty in walking and frequently had pain on her body, thus, she was a

17  mentally and physically disabled person.

18     13. On behalf of Mrs. Nakano, plaintiff immediately contacted defendant McMullin, obtained from him a

19  bank account information for direct deposit, and paid the 3 month back rents into the bank account.

20     14. Since then, plaintiff paid rent each month into the defendant's bank account on behalf of Mrs. Nakano.

21     15. In or about May of 2017, Mrs. Nakano was complaining about back pain, was lying in bed whole days,

22  and stopped eating for several days. Mrs. Nakano told plaintiff that she had no family or relative in the U.S. So,

23  plaintiff prepared meals for Mrs. Nakano. Otherwise, Mrs. Nakano would have died of hunger.

24     16. Since about July of 2017 to the present, it was clear that Mrs. Nakano needed a caretaker and plaintiff

25  repeatedly asked defendant McMullin to approve plaintiff as a replacement tenant for the deceased husband of

26  Mrs. Nakano, an additional tenant, or a roommate. Said defendant denied such request without providing any

27  reason. Therefore, plaintiff and Mrs. Nakano made an agreement that plaintiff would become a roommate and a

28  caretaker, and use, occupy and reside in the east-side bedroom of the apartment in exchange for plaintiff's work

for shopping foods, paying monthly utilities and rent, managing bank accounts, checking incoming mails regularly and timely responding to a mail when necessary, and other care taking tasks. Plaintiff occupied and resided in the apartment more than 30 consecutive days and, thus, became a tenant (rather than a guest) automatically without consent of defendant McMullin as a matter of law.

17. Sometime in July or early August of 2017, while plaintiff was talking with Mrs. Nakano in the apartment, suddenly defendant McMullin's handyman/agent Oscar came and entered the apartment using his own key without any prior notice or consent of plaintiff or Mrs. Nakano. Oscar did not fix anything in the apartment and just stayed in the room where plaintiff and Mrs. Nakano were talking each other. Plaintiff asked Oscar to leave the apartment so that plaintiff and Mrs. Nakano could have private conversations, but Oscar maliciously refused and stayed there for 30 minutes or more.

18.a) On 8-19-2017 plaintiff brought foods to Mrs. Nakano at her apartment. Then, Oscar deliberately and maliciously called 911 and made a false report that "burglary in progress," knowing that plaintiff had been associating with Mrs. Nakano frequently in the past.

b) Within a matter of minutes, a police helicopter flew and circled above the apartment and defendants police officers Bacilio and Gamel showed up and seized plaintiff for 40 minutes against his will. Oscar asked the police to get keys from plaintiff and the police took 3 key-rings from plaintiff against his protest and resistance. Oscar took and kept one key-ring and returned other 2 key-rings to plaintiff. Plaintiff was not arrested.

19. From approximately November 2017 until February 17, 2018, Mrs. Nakano was hospitalized for some bodily injury.

20. On or about 1-5-2018, Mrs. Nakano again received by mail a "3-Day Notice to Pay or Quit" for the January 2018 rent from defendant McMullin. Plaintiff immediately called and talked with said defendant on a phone and he said that the January 2018 rent payment check that plaintiff deposited into defendant's bank account had been rejected by his bank as a "fraudulent check." However, a later bank statement indicated that the check had been paid by Mrs. Nakano's bank at the time of plaintiff's deposit into said defendant's bank.

21. Therefore, defendant McMullin intentionally and unlawfully fabricated and forged the false "3-Day Notice to Pay Rent or Quit" to harass and intimidate old, disabled lady Nakano and her caretaker plaintiff.

22. On 1-5-2018 at around 4pm, defendant McMullin or his agent unlawfully entered the apartment without providing advance notice or consent of plaintiff and maliciously cut hot water and electricity.

- 4 -

23.a) On 1-10-2018 and in the morning, defendant McMullin again unlawfully entered the apartment without providing advance notice or plaintiff's consent and changed the locks of all entrance doors without giving plaintiff a key for the new locks. Plaintiff immediately called the police for such illegal lockout.

b) When defendant police officer Sgt. Cook arrived, defendant McMullin told him that he did not want plaintiff to enter the apartment and asked the police officer to arrest plaintiff for trespass if he would refuse to leave. Plaintiff insisted that he had the right to enter and use the apartment as a roommate and caretaker of Mrs. Nakano. Plaintiff further told the police that he had a key to the apartment and held foods, furniture and other personal properties inside the apartment.

c) Nevertheless, said defendant police officer forcibly removed plaintiff from the apartment with threat of use of force and arrest.

d) As a result, plaintiff has been prevented from gaining reasonable access to the apartment and retrieving mails of Mrs. Nakano from 1-10-2018 until about 2-16-2018. In addition, defendant McMullin removed from the apartment plaintiff's personal properties, furnishings, foods and other items without plaintiff's consent.

e) A few days later after said lockout, plaintiff called and talked defendant McMullin on a phone. He admitted that he took all foods in the refrigerator and offered plaintiff payment for the foods. However, plaintiff has not received any payment by this date.

24. On 2-10-2018, since Mrs. Nakano clearly needed a caretaker, she duly executed a Power of Attorney and appointed plaintiff as her attorney-in-fact and agent.

25. On 2-16-2018 Mrs. Nakano returned to the apartment from a hospital.

26.a) On or about 2-20-2018, only 10 days after Mrs. Nakano executed the aforementioned Power of Attorney, defendant McMullin maliciously prepared a document intended to revoke said power of attorney, took hungry senile lady Mrs. Nakano to a restaurant and pressured the fragile, disabled, English-illiterate lady to sign such revocation document without her understanding. Plaintiff discovered these facts after January 2019.

b) Codefendant notary public Braverman was a friend and co-worker of defendant McMullin as a real estate agent and notarized the document on behalf of defendant McMullin for free. As satisfactory evidence to establish the identity of Mrs. Nakano, defendant Braverman used defendant McMullin as a "credible witness," who had to be a financially disinterested person by law. Defendant McMullin deliberately provided a perjured testimony under oath that he had no financial interest in the revocation document and further that it would be very difficult or

1   impossible for Mrs. Nakano to obtain another form of identification such as a photo ID. Defendant Braverman

2   knew or should have known that such testimony was false.

3          c) Nevertheless, for the purpose of deceiving plaintiff and Mrs. Nakano, defendant Braverman used

4   defendant McMullin's perjured testimony and made intentional false acknowledgement, which constituted a crime

5   of forgery under California Penal Code. The revocation document was a forged document as a matter of law.

6          d) Later, defendant McMullin secretly, maliciously and fraudulently used such forged revocation of power

7   of attorney for his advantage by advocating and spreading to others a despicable image that plaintiff was a bad

8   and deceitful person hiding such forged power of attorney revocation document.

9          e) Therefore, defendant Braverman is liable as having engaged in joint action or conspired with defendant

10  McMullin whenever defendant McMullin or any other person used, or claimed existing of, such forged revocation of

11  power of attorney.

12         f) Plaintiff did not know existing of such forged revocation document until January of 2019.

13         g) Since this incident until today, plaintiff had numerous opportunities to talk to Mrs. Nakano and she

14  always denied signing any revocation document. Thus, plaintiff had and has no actual knowledge of revocation or

15  termination of his authority as attorney-in-fact of Mrs. Nakano.

16         27. On 3-22-2018, defendant McMullin filed an eviction action against Mrs. Nakano claiming non-payment

17  of rent. Later, plaintiff joined the eviction action as a roommate and a defendant to defend himself as well as his

18  principal, senile lady Mrs. Nakano.

19         28.a) On 3-29-2018, defendant McMullin and his handyman Oscar unlawfully entered the apartment

20  without providing advance notice or plaintiff's consent. They tried to change locks of entrance doors without

21  plaintiff's consent and, thus, plaintiff immediately called the police and several police officers including defendants

22  Doe1 and Doe2 showed up.

23         b) Defendant McMullin told the police that he did not want plaintiff to enter the apartment and asked the

24  police to arrest plaintiff for trespass if he would refuse to leave. Plaintiff insisted that he had the right to enter and

25  use the apartment as a roommate, caretaker and attorney-in-fact of Mrs. Nakano. Plaintiff further told the police

26  that he had a key to the apartment and held foods, furniture and other personal properties inside the apartment.

27  Defendant McMullin further told the police that the Power of Attorney of Mrs. Nakano had been revoked, but did

28  not produce any evidence.

c) Defendant police officers Doe1 and Doe2 took the defendant McMullin's side and said to him, "Go ahead and change the locks." Thus, defendant McMullin and his handyman Oscar changed the locks of all entrance doors in front of both the police officers and plaintiff over plaintiff's protest. Plaintiff was not given a key to the new locks. The police officers further told plaintiff that should plaintiff come back to the apartment, plaintiff would be arrested for trespass.

d) As a result, plaintiff has been prevented from gaining reasonable access to the apartment and retrieving mails of Mrs. Nakano from 3-29-2018 through today. In addition, defendant McMullin removed and stole from the apartment plaintiff's personal properties, furnishings, foods and other items without plaintiff's consent.

29. On 7-12-2018 (Thursday), plaintiff visited the office of defendant Eviction Defense Network and retained defendants attorneys Juliana Romeu and Elena I. Popp to defend the eviction action brought by defendant McMullin against Mrs. Nakano. This plaintiff signed on behalf of Mrs. Nakano as her attorney-in-fact a written retainer agreement, which provided that for a flat retainer fee of $700 with no additional charges or fees regardless of number of court appearances, those attorneys would defend the eviction action including a trial by jury till the end of such trial on behalf of both Mrs. Nakano and this plaintiff. Plaintiff paid the retainer fee on behalf of Mrs. Nakano.

30.a) On 7-16-2018 (Monday) at 8:30 AM, the date of trial of the eviction action, defendant Romeu filed substitutions of attorney for Mrs. Nakano and this plaintiff.

b) However, later in the morning in the courthouse and for the purpose of maliciously interfering with the attorney-client relationship between this plaintiff and his attorneys, defendant McMullin maliciously caused a copy of the forged power of attorney revocation document to be secretly delivered to defendant Romeu and also made orally to defendant Romeu a false and unprivileged publication charging plaintiff with intentional fraud, deceit and dishonesty of knowingly hiding the forged power of attorney revocation document from defendant Romeu. As a result, defendant Romeu made an oral motion to be relieved as attorney of record for Mrs. Nakano claiming a fraud by this plaintiff without plaintiff's or Mrs. Nakano's knowledge or consent and had the motion granted by the court without any opposition.

c) In the afternoon of the trial date, defendant Romeu told plaintiff first time that the Mrs. Nakano's power of attorney had been revoked and thus plaintiff knowingly deceived defendant Romeu and that if plaintiff would consent to her withdrawal as attorney of record, she would refund the full $700 retainer fee. Plaintiff told said

1  defendant that plaintiff did not know the power of attorney had been revoked and thus plaintiff did not knowingly

2  deceive her or anyone else. Indeed, defendant Romeu totally refused to provide a copy of such alleged revocation

3  document to plaintiff despite his request.

4      31. On 7-17-2018, to show that plaintiff did not knowingly deceive defendant Romeu or anyone else,

5  plaintiff provided to said defendant with a letter of affidavit testifying that plaintiff did not have actual knowledge of

6  the revocation or termination of the power of attorney or the attorney-in-fact's authority, as provided by California

7  Probate Code Sec.4305, which provided protection of the attorney-in-fact who undertook in good faith reliance of a

8  power of attorney.

9      32. On 7-27-2018, defendant McMullin intentionally and maliciously terminated the electric utility to the

10  subject apartment without plaintiff's knowledge or consent.

11      33.a) On 8-1-2018 defendant Romeu withdrew from representation of this plaintiff without consent of

12  plaintiff. Defendant Popp approved such withdrawal by saying that her time was better spent to help other her

13  clients. And yet both defendants refused to refund the retainer fee of $700.

14      b) Plaintiff has performed all conditions, covenants, and promises required on his part to be performed in

15  accordance with the terms and conditions of the retainer agreement.

16      34.a) On 10-28-2018 plaintiff visited Mrs. Nakano at defendant Rehabilitation Center to discuss the

17  eviction action brought by defendant McMullin in a state court and other important matters that required immediate

18  attention of Ms. Nakano.

19      b) Defendant Rehabilitation Center was open to public visitors during hours of 8AM to 8PM, 7 days/week.

20      c) While plaintiff was talking with Mrs. Nakano peacefully, several employees of the facility came and

21  interrupted their conversation. Plaintiff asked the employees not to interfere and also requested for privacy.

22      d) In retaliation, defendant employees Doe3 and Doe4 demanded plaintiff to leave the facility, physically

23  attacked, grabbed, pushed, pulled, and shoved plaintiff against his will and resistance.

24      e) Then, said defendants maliciously called the police and defendant police officers Romain and Herbert

25  arrived. Said defendants asked the police to arrest plaintiff for trespass. The police officers seized plaintiff's person

26  for approximately 30 minutes and threatened him with arrest should plaintiff refuse to leave the facility. Plaintiff

27  insisted that he had the civil rights to visit Mrs. Nakano as a friend, a roommate, a caretaker and attorney-in-fact.

28  Nevertheless, the police officers forcibly removed plaintiff from the facility with threat of use of force and arrest.

f) At no time plaintiff interfered with defendants' business.

35.a) On 11-22-2018 and around 7PM plaintiff again needed to and did visit Mrs. Nakano at defendant Rehabilitation Center to discuss legal, financial and other important matters. While plaintiff was talking with Mrs. Nakano, defendant Magi, an employee of the facility, came and interrupted plaintiff, and told plaintiff that he was permitted to talk with Mrs. Nakano. Then, about ten minutes later said defendant came back and told plaintiff to leave. Plaintiff asked why, and she said that plaintiff's name was not on the facility's list of approved visitors and also 7:30PM was the end of visitation hours. Plaintiff said that he was not told to be approved, he was not told how to be approved, and he was told that visitation hours was 8AM to 8PM, 7 days/week.

b) Then, defendants Magi, Doe5, and Doe6 demanded plaintiff to leave the premises and physically attacked, grabbed, pushed, pulled, and shoved plaintiff against his will and resistance.

d) Then, those defendants maliciously called the police and defendant police officers Shuck and Torres showed up. Defendants Magi and others asked the police to arrest plaintiff for trespass. The police officers seized plaintiff's person for approximately 30 minutes and threatened him with arrest should plaintiff refuse to leave the facility. Plaintiff insisted that he had the civil rights to visit Mrs. Nakano as a friend, a roommate, a caretaker and attorney-in-fact, but the police forcibly removed plaintiff from the facility with threat of use of force and arrest.

f) At no time plaintiff interfered with defendants' business.

36.a) On 12-24-2018 and around 3PM plaintiff visited Mrs. Nakano at defendant Rehabilitation Center to give her foods, mails, legal papers, magazines and other papers. While plaintiff was talking with Mrs. Nakano peacefully in an activity room, defendant Linderwood, an employee of the facility, came to the room, called several co-workers, and demanded to surrender plaintiff's shoulder bag containing his private documents. When plaintiff refused, defendants Linderwood, Buenafe, Cervantes, Doe7, and Doe8 physically and violently attacked, grabbed, pushed, pulled, and shoved plaintiff's person and his shoulder bag against his will and resistance.

b) After failing to steal plaintiff's bag and documents by force, those defendants in jointly acting kept and imprisoned plaintiff in the activity room against his will for approximately 15 minutes by locking all doors of the room. Defendants did so by instructing other co-workers as well as a patient on wheel-chair to block all doors.

c) While falsely imprisoning plaintiff against his will in the activity room, defendant Linderwood and other defendants called the police and defendant police officer Sgt. Cuevas came to the facility. Said defendant police officer seized plaintiff for approximately 30 minutes. Plaintiff told said police officer that he had the civil rights to

1  visit Mrs. Nakano as a friend, a roommate, a caretaker and attorney-in-fact. The police said that since defendant

2  Linderwood as an employee of the facility was asking plaintiff to leave, he would arrest plaintiff for trespass if

3  plaintiff should refuse to leave immediately. Said police forcibly removed plaintiff from the facility with threat of use

4  of force and arrest.

5      d) Plaintiff did not steal, nor was he in process of stealing, any property belonging to a defendant or

6  anyone else, nor had he committed any crime against a defendant or anyone else, and defendants knew of

7  plaintiff's innocence. Also, at no time plaintiff interfered with defendants' business.

8      37.a) Sometime between March 2018 and December 2018, defendants McMullin and Mead intentionally

9  and maliciously made in writing and orally to each other, defendant Romeu, employees/agents of defendant

10  Rehabilitation Center, defendants police officers and others a false and unprivileged publication which charged

11  plaintiff with the crimes of elder abuse against Mrs. Nakano or others, theft, larceny, or embezzlement of money

12  and property of Mrs. Nakano or others, fraud/deceit of unlawfully obtaining a signature from Mrs. Nakano as well

13  as hiding the forged revocation of the power of attorney, and other criminal acts.

14      b) Such defendants' false and unprivileged publication injected into other defendants' mind a despicable

15  image that plaintiff was a bad and deceitful person hiding such forged revocation document, targeting and

16  victimizing Mrs. Nakano and other elderly people, and thereby exposed plaintiff to hatred, contempt, ridicule, or

17  obloquy, and caused him to be shunned or avoided by defendants Romeu, Popp, employees/agents of

18  Rehabilitation Center, police officers and others, as alleged above.

19      c) In addition, such defendants' false publication tended directly to injure plaintiff in respect to his authority

20  of attorney-in-fact of Mrs. Nakano and his client/attorney relationship with defendants attorney Romeu and Popp

21  by imputing to him general disqualification and also, by natural consequences, caused actual damages to plaintiff

22  as a result of denial of attorney representation, association, visitation, privacy and speech with Mrs. Nakano by

23  defendants attorney Romeu and Popp, employees/agents of defendant Rehabilitation Center, police officers, and

24  others, as alleged above.

25      d) Those written and/or oral words were false because plaintiff has never committed such alleged crimes

26  against Mrs. Nakano or anyone else and also has never hided the forged revocation of the power of attorney

27  simply because he did not have actual knowledge of such revocation document until about January 2019.

28      38. On 3-1-2019 defendant McMullin's eviction action against plaintiff in the state court was dismissed by

1  the court in favor of this plaintiff.

2      39. On or about 3-1-2019 defendant McMullin intentionally and maliciously terminated gas service to the

3  apartment without consent of plaintiff.

4      40. At no time, did plaintiff consent to any of the acts of defendants.

5      41. There was a reasonable expectation of privacy between plaintiff and Mrs. Nakano under the

6  circumstances and the conduct of defendants amounted a serious invasion of the protected privacy interest.

7      42. Defendants City of Los Angeles, La Brea Rehabilitation Center, its manager Berger and administrator

8  Mead, Eviction Defense Network, and McMullin as the master/employer of his agent/handyman Oscar are liable

9  because: a) They approved and ratified those misconduct of their employees/agents, had the decision making

10  authority over their policies, practices and customs, and failed to and were deliberately indifferent to the need to

11  properly train, supervise, audit, and discipline the individually named defendant employees/agents under their

12  command; and b) The doctrine of respondeat superior applies to state law claims.

13      43. It was a well settled law in California that in residential rental housing  however tenancy was created or

14  regardless of who had the right to possession, orderly procedure and preservation of the peace required that the

15  actual possession should not have been disturbed except by legal process. Any self-help eviction was illegal and

16  only the sheriff had the authority to change locks according to a court judgment.

17      44. It was a well settled law in California that "enter and occupy without owner's permission" stated by a

18  California trespass penal statute did not apply when a facility was open to the public such as Bank of America or

19  "occupy" was temporary such as less than a few hours or a few days rather than permanent.

20
21  V. CAUSES OF ACTION

22                    FIRST CAUSE OF ACTION
      [VIOLATION OF 42 U.S.C. 1983: FIRST, FOURTH, FIFTH AND FOURTEENTH AMENDMENTS]
23  (Against defendants City of Los Angeles and its police officers, Rehabilitation Center and its employees/agents, McMullin, and Braverman)

24      45. Plaintiff incorporates herein by reference Paragraphs 1 through 44 above.

25      46.a) Regarding the incidents on 10-28-2018, 11-22-2018, and 12-24-2018 at defendant Rehabilitation

26  Center, by threatening to arrest plaintiff for trespass without probable cause, those defendant police officers

27  described above acted under color of state law and defendants Rehabilitation Center employees/agents engaged

28  in joint action or conspired with those defendant police officers. Defendants McMullin and Braverman engaged in

1  joint action or conspired with defendants Rehabilitation Center employees/agents. Those individual defendants

2  willfully and maliciously denied and violated plaintiff's rights of association, visitation, privacy and speech with Mrs.

3  Nakano, being attorney-in-fact of Mrs. Nakano, being a roommate of Mrs. Nakano, privacy, freedom from

4  unreasonable search and seizure of person and property, freedom from unlawful trespass arrest, equal protection

5  of the laws, and/or due process of law involving those rights, guaranteed by the First, Fourth, Fifth and Fourteenth

6  Amendments to the US Constitution and directly interfered with the exercise of those rights.

7       b) As a direct and proximate result of the intentional and malicious acts, conduct and omissions committed

8  under the color of state law in the form of policies, practices, customs, usages, failure to train, supervise, audit and

9  discipline against plaintiff's person and property by defendants, Plaintiff's rights under the United States

10  Constitution were violated, and plaintiff has suffered and continues to suffer general damages for great pain and

11  suffering, embarrassment, annoyance, humiliation, hostility, disparagement, defamation, mental anguish,

12  emotional, mental, and physical distress, loss of liberty, and loss of enjoyment of life, in the sum of $560,000.

13       c) Defendants' acts described above were done with malice, fraud, oppression or in reckless disregard of

14  the rights of plaintiff in that they subjected plaintiff to cruel and unjust hardship in willful and conscious disregard of

15  plaintiff's constitutional rights and safety, and, thus, plaintiff is entitled to an award of punitive damages in the sum

16  of $980,000.

17       47.a) Regarding the incidents occurred on 8-19-2017, 1-10-2018, 2-20-2018, 3-29-2018, by making,

18  accepting and approving the intentional false report of burglary, changing locks and terminating utilities, and/or

19  threatening to arrest plaintiff for trespass without probable cause or any legal basis, those defendant police officers

20  described above acted under color of state law. Defendant McMullin and his agent/employee Oscar engaged in

21  joint action or conspired with those defendant police officers and defendant Braverman engaged in joint action or

22  conspired with defendant McMullin. Those defendants willfully and maliciously denied and violated plaintiff's

23  constitutional rights of association and visitation with Mrs. Nakano, being attorney-in-fact of Mrs. Nakano, being a

24  roommate of Mrs. Nakano, privacy, freedom from unlawful eviction, lockout, and trespass arrest, freedom from

25  unreasonable search and seizure of person and property, freedom from a false police report, equal protection of

26  the laws, and/or due process of law involving those rights, guaranteed by the First, Fourth, Fifth, and Fourteenth

27  Amendments to the US Constitution and directly interfered with the exercise of those rights.

28       b) As a direct and proximate result of the intentional and malicious acts, conduct and omissions committed

1    under the color of state law in the form of policies, practices, customs, usages, failure to train, supervise, audit and

2    discipline against plaintiff's person and property by defendants, Plaintiff's rights under the United States

3    Constitution were violated, and plaintiff has suffered and continues to suffer the special damages for loss of foods,

4    beds, computers, tools, clothes, TV sets, electronics, cabinets, drawers, furniture and documents in the sum of

5    $15,000 and for economic loss relating to use of the apartment in the sum of $100,000, as well as the general

6    damages stated above.

7        c) Plaintiff is entitled to the award of punitive damages stated above.

8        48. At all times herein mentioned, the rights of plaintiff described above were clearly and well established.

9

                                SECOND CAUSE OF ACTION
10    [VIOLATION OF 42 U.S.C. 1985, 1986: conspiracy to deprive person of rights or privileges and
                    neglect to prevent interference with civil rights]
11                            (Against all defendants)

12        49. Plaintiff incorporates herein by reference Paragraphs 1 through 48 above.

13        50. Each of defendants conspired with other defendant(s) for the purpose of depriving and did deprive

14    plaintiff, because of his Japanese and Asian race, of his constitutional rights of association, visitation, privacy and

15    speech with Mrs. Nakano, being attorney-in-fact of Mrs. Nakano, being a roommate of Mrs. Nakano, freedom from

16    discrimination, freedom from unlawful eviction, lockout, entry, private occupation, and trespass arrest, freedom

17    from unreasonable search and seizure of person and property, employment of an attorney in the state court

18    eviction case, freedom from a false police report, freedom from assault, battery and false imprisonment, due

19    process of law involving those rights, equal protection of the laws, and/or equal privileges and immunities under

20    the laws, in violation of 42 U.S.C. 1985.

21        51. Each of those defendants had actual knowledge of the conspiracy and had the power to prevent or aid

22    in preventing such conspiracy, but neglected or refused to prevent such conspiracy. As a result, plaintiff and his

23    interests were harmed and he was deprived of the equal protection of the laws and of equal privileges and

24    immunities under the laws, in violation of 42 U.S.C. 1986.

25        52. As a direct and proximate result of defendants' acts, conduct and omissions, plaintiff has suffered and

26    continues to suffer the special damages and the general damages and is entitled to the punitive damages as

27    alleged in the First and Third Causes of Action.

28

THIRD CAUSE OF ACTION
[VIOLATION OF 42 U.S.C. 1981: make and enforce a contract]
(Against defendants McMullin, Braverman, and Eviction Defense Network and its employees/agents)

53. Plaintiff incorporates herein by reference Paragraphs 1 through 48 above.

54. By willfully and maliciously denying plaintiff's request to lease the apartment as a replacement tenant, an additional tenant, or a roommate, defendant McMullin denied the plaintiff's same rights to make and enforce a contract of apartment lease as are enjoyed by white persons because of plaintiff's Japanese and Asian race.

55. By willfully and maliciously revoking the power of attorney of Mrs. Nakano with perjured testimony and false acknowledgment, defendants McMullin and Braverman denied the plaintiff and Mrs. Nakano's same rights to make and enforce the contracts of power of attorney, attorney-in-fact and principal, and employment of an attorney in the state court eviction case as are enjoyed by white persons because of their Japanese and Asian race.

56. a) By breaching the retainer agreement, defendants Romeu and Popp willfully and maliciously denied the plaintiff and Mrs. Nakano's same rights to make and enforce the retainer contract in the state court eviction case as are enjoyed by white persons because of their Japanese and Asian race.

b) Defendants McMullin and Braverman are also liable because they engaged in joint action or conspired with defendants Romeu and Popp against plaintiff and Mrs. Nakano as alleged above.

57. Therefore, those defendants are liable in violation of 42 U.S.C. 1981.

58. As a direct and proximate result of defendants' acts, conduct and omissions, plaintiff has suffered and continues to suffer special damages for loss of the retainer fee in the sum of $700 and for defending the eviction action by himself including 14 court appearances over a 7 month period and preparing jury instructions and jury trial in the sum of $30,000, as well as the general damages and is entitled to the punitive damages as alleged in the First Cause of Action.

FOURTH CAUSE OF ACTION
[VIOLATION OF 42 U.S.C. 1982: lease of real property]
(Against defendants McMullin, Sgt. Cook, Doe1, Doe2, and City of Los Angeles)

59. Plaintiff incorporates herein by reference Paragraphs 1 through 48 above.

60. By willfully and maliciously denying plaintiff's request to lease the subject apartment as a replacement tenant, an additional tenant, or a roommate, and also changing the locks of the apartment, defendants McMullin and police officers denied the plaintiff's same rights to lease real property as are enjoyed by white persons because of plaintiff's Japanese and Asian race, in violation of 42 U.S.C. 1982.

1       61. As a direct and proximate result of defendants' acts, conduct and omissions, plaintiff has suffered and

2   continues to suffer the special and general damages and is entitled to the punitive damages as alleged in the First

3   Cause of Action.

4

                              **FIFTH CAUSE OF ACTION**

5             [VIOLATION OF FEDERAL FAIR HOUSING ACT (FHA), 42 U.S.C. 3604, 3613]
         (Against defendants McMullin, Braverman, Rehabilitation Center and its employees/agents, and

6                            City of Los Angeles and its police officers)

7       62. Plaintiff incorporates herein by reference Paragraphs 1 through 48 above.

8       63. The incidents on 8-19-2017, 1-10-2018, 2-20-2018, and 3-29-2018 at the apartment show that

9   defendant McMullin, jointly with defendants City of Los Angeles and its police officers Bacilio, Gamel, Sgt. Cook,

10  Doe1, and Doe2 as well as defendant Braverman, willfully and maliciously carried out wrongful eviction, wrongful

11  entry, invasion of the right of private occupancy against plaintiff, prevented plaintiff from helping, assisting,

12  accommodating and associating with disabled Mrs. Nakano, and thereby discriminated against plaintiff and

13  disabled Mrs. Nakano on account of their Japanese and Asian race, color, age, national origin, primary language

14  of Japanese, and association with disabled Mrs. Nakano as well as interfered with, intimidated and retaliated

15  against them in their exercise or enjoyment of, or on account of their having exercised or enjoyed, or aided or

16  encouraged another to exercise or enjoy, the rights of freedom from discrimination, retaliation, wrongful eviction,

17  wrongful entry, and invasion of the right of private occupancy and of reasonable accommodation for Mrs. Nakano's

18  disability, all granted and protected by the FHA, in violation of the FHA.

19      64. The incidents on 10-28-2018, 11-22-2018, and 12-24-2018 at defendant Rehabilitation Center show

20  that defendants Rehabilitation Center and its employees/agents, jointly with defendants City of Los Angeles and its

21  police officers Romain, Herbert, Shuck, Torres, and Sgt. Cuevas, willfully and maliciously prevented plaintiff from

22  visiting disabled Mrs. Nakano, and thereby discriminated against plaintiff and disabled Mrs. Nakano on account of

23  their Japanese and Asian race, color, age, national origin, primary language of Japanese, and association with

24  disabled Mrs. Nakano as well as interfered with, intimidated and retaliated against them in their exercise or

25  enjoyment of, or on account of their having exercised or enjoyed, or aided or encouraged another to exercise or

26  enjoy, the rights of freedom from discrimination, retaliation, and invasion of the right of private occupancy and of

27  communicating in private, helping, assisting, accommodating, associating with Mrs. Nakano and reasonable

28  accommodation for Mrs. Nakano's disability, all granted and protected by the FHA, in violation of the FHA.

65. As a direct and proximate cause of defendants' acts, conduct and omissions, plaintiff has suffered and continues to suffer the special and general damages and is entitled to the punitive damages as alleged in the First Cause of Action.

SIXTH CAUSE OF ACTION (State Law Claims)<br>
[ASSAUL, BATTERY, FALSE IMPRISONMENT, INTERFERENCE WITH EXIT, and INTERFERENCE WITH CIVIL RIGHTS BY THREATS, INTIMIDATION, COERCION OR VIOLENCE]<br>
(Cal. Civil Code 1708.9, 52, 52.1, 51.7)<br>
(Against defendants Rehabilitation Center and its employees/agents)

66. Plaintiff incorporates herein by reference Paragraphs 1 through 48 above.

67. Regarding the incidents on 10-28-2018, 11-22-2018, and 12-24-2018 at defendant Rehabilitation Center, by physically attacking plaintiff, defendants employees/agents of Rehabilitation Center intended to, and did, place plaintiff in apprehension of great bodily harm, and thereby committed an assault against plaintiff.

68. In physically attacking plaintiff, those defendants also acted with the intent to make, and did make, a contact with plaintiff's person and thereby committed a battery against plaintiff.

69. Furthermore, by willfully, maliciously, and unlawfully keeping and imprisoning plaintiff in the activity room against his will, defendants employees/agents of Rehabilitation Center committed false imprisonment against plaintiff and also interfered with his exit from the health facility in violation of Cal. Civil Code 1708.9.

70. a) Aforementioned acts and threats of arrest for trespass without probable cause by those defendants with help of defendants police officers involved violence, threats of violence, coercion and intimidation by threat of violence motivated by defendants' hatred and prejudice of plaintiff's Japanese and Asian race, color, age, national origin, and primary language against plaintiff and interfered with, or were attempts to interfere with, plaintiff's exercise of civil rights of association, visitation, privacy and speech with Mrs. Nakano, and due process of law protected and guaranteed by the California and Federal Constitutions.

b) Therefore, those defendants violated Cal. Civil Code 52, 52.1, 51.7 and plaintiff is entitled to statutory penalty of $25,000 for each offense according to Cal. Civil Code 52(b)(2), in the total sum of $75,000.

71. In addition, as a direct and proximate result of defendants' acts, conduct and omissions, plaintiff has suffered and continues to suffer the general damages and is entitled to the punitive damages as alleged in the First Cause of Action.

Complaint for damages for civil rights and other violations

**SEVENTH CAUSE OF ACTION (State Law Claims)**
**[OFFICIAL MISCONDUCT OR NEGLECT BY NOTARY PUBLIC, CONSTRUCTIVE FRAUD, and**
**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIP AND CIVIL RIGHTS]**
(Cal. Gov. Code 8214, Cal. Civil Code 1714, 1573)
(Against defendants Braverman and McMullin)

72. Plaintiff incorporates herein by reference Paragraphs 1 through 48 above.

73. In preparing, creating and notarizing the revocation of the Power of Attorney of Mrs. Nakano on 2-20-2018, defendant notary Braverman, in jointly acting and cooperating with defendant McMullin, committed official misconduct or neglect by failing to obtain proper satisfactory evidence, making a false acknowledgement, and also willfully stating as true material facts that he knew to be false [Cal. Gov. Code 8214].

74. In addition, such misconduct or neglect or omission was specifically declared by the law [Cal. Gov. Code 8214] to be fraudulent without respect to actual fraud and, thus, defendants Braverman and McMullin jointly committed a constructive fraud.

75. Furthermore, by intentionally and maliciously revoking the Power of Attorney contract made between plaintiff and Mrs. Nakano and submitting such revocation document to other defendants, defendants Braverman and McMullin jointly interfered with plaintiff's contractual relationship with Mrs. Nakano as well as with defendants Eviction Defense Network and its employees/agents.

76. In preparing and creating the revocation of the Power of Attorney of Mrs. Nakano, those defendants jointly, intentionally, maliciously and unlawfully invaded into the private affairs and interfered with the association, visitation, privacy, free speech and due process rights of plaintiff and Mrs. Nakano protected and guaranteed by the California and Federal Constitutions.

77. As a direct and proximate result of defendants Braverman and McMullin's acts, conduct and omissions, plaintiff has suffered and continues to suffer the special and general damages and is entitled to the punitive damages as alleged in the First and Third Causes of Action.

**EIGHTH CAUSE OF ACTION (State Law Claims)**
**[ILLEGAL LOCKOUT, INTERRUPTION OF UTILITY SERVICES, REMOVAL OF PERSONAL PROPERTIES,**
**CONVERSION, TRESPASS, and INTERFERENCE WITH CIVIL RIGHTS BY THREATS,**
**INTIMIDATION, COERCION OR VIOLENCE] (Cal. Civil Code 789.3, 3336, 52, 52.1, 51.7)**
(Against defendant McMullin)

78. Plaintiff incorporates herein by reference Paragraphs 1 through 48 above.

79.a) Defendant McMullin, with help of defendants police officers, with intent to terminate the occupancy of plaintiff and without advance notice or consent of plaintiff, repeatedly, unlawfully, willfully and maliciously entered

1  the apartment, prevented plaintiff from gaining reasonable access to the apartment by changing the locks,

2  interrupted utility services, removed plaintiff's personal properties and converted the same to defendant's own use,

3  and occupied and continues to occupy the apartment without plaintiff's consent to this date.

4      b) Thus, said defendant violated and is violating the provisions of Cal. Civil Code 789.3 to this date,

5  trespassed and is trespassing the apartment, and also committed wrongful conversion.

6      c) Therefore, plaintiff is entitled to a statutory penalty of $100 for each day of the violation, but no less than

7  $250, for each separate cause of action, as provided by Cal. Civil Code 789.3, which totals the sum of $100,000 to

8  this date.

9      80.a) Aforementioned acts and threats of arrest for trespass without probable cause by the defendant with

10 help of defendants police officers involved violence, threats of violence, coercion and intimidation by threat of

11 violence motivated by defendant's hatred and prejudice of plaintiff's Japanese and Asian race, color, age, national

12 origin, and primary language of Japanese against plaintiff and interfered with, or were attempts to interfere with,

13 plaintiff's exercise of civil rights of roommate, association, visitation, privacy and speech with Mrs. Nakano, and

14 due process of law protected and guaranteed by the California and Federal Constitutions.

15     b) Therefore, the defendant violated and is violating Cal. Civil Code 52, 52.1, 51.7 and, thus, plaintiff is

16 entitled to the statutory penalty of $25,000 for each offense according to Cal. Civil Code 52(b)(2), in the total sum

17 of $125,000.

18     81. In addition, as a direct and proximate result of defendant's acts, conduct and omissions, plaintiff has

19 suffered and continues to suffer the special and general damages and is entitled to the punitive damages as

20 alleged in the First Cause of Action.

21
                       NINTH CAUSE OF ACTION (State Law Claims)
22     [BREACH OF CONTRACT, MONEY HAD AND RECEIVED, FRAUD and DECEIT]
                       (Cal. Civil Code 1692, 1572, 1710)
23 (Against defendants Eviction Defense Network and its employees/agents, McMullin and Braverman)

24     82. Plaintiff incorporates herein by reference Paragraphs 1 through 48 above.

25     83.a) Defendants Romeu, Popp, and Eviction Defense Network intentionally, maliciously and unlawfully

26 breached the written retainer agreement/contract by withdrawing from representation of plaintiff and Mrs. Nakano

27 in the state court eviction case without consent of plaintiff or Mrs. Nakano.

28     b) Said defendants further breached the written retainer agreement/contract by breaching their fiduciary

1  duty to protect their clients, this plaintiff and Mrs. Nakano, since defendants unilaterally abandoned this plaintiff

2  and Mrs. Nakano without proper and timely communication.

3      c) Thus, those defendants became indebted to plaintiff in the sum of $700 for money had and received by

4  them for the use and benefit of plaintiff.

5      d) Neither the whole nor any part of this sum has been paid, although demand therefore has been made,

6  and there is due, owing, and unpaid the sum of $700, with the legal interest thereon from 8-1-2018.

7      e) Defendants McMullin and Braverman are also liable because they intentionally, maliciously and

8  unlawfully created the forged revocation document and transmitted it or caused it to be transmitted to defendants

9  Romeu and Popp causing them to breach the written retainer agreement against plaintiff and Mrs. Nakano.

10      84.a) Plaintiff also alleges that at the time defendants attorneys Romeu and Popp made to this plaintiff the

11  promise of representing Mrs. Nakano and this plaintiff in the state court eviction action, defendants had no

12  intention of performing it.

13      b) Plaintiff, at the time such promise was made and paid the retainer fee, was ignorant of defendants'

14  secret intention not to perform and plaintiff could not, in the exercise of reasonable diligence, have discovered

15  defendants' such secret intention. If plaintiff had known of the actual intention of defendants, plaintiff would not

16  have paid such retainer fee.

17      c) Therefore, those defendants intentionally, maliciously and unlawfully committed fraud and deceit.

18      85. As a direct and proximate result of defendants' acts, conduct and omissions, plaintiff has suffered and

19  continues to suffer the special damages and general damages and is entitled to the punitive damages as alleged

20  in the Third Cause of Action.

21

22  TENTH CAUSE OF ACTION (State Law Claims)
   [LIBEL and SLANDER] (Cal. Civil Code 45, 46)
   (Against defendants McMullin and Mead)

23

24      86. Plaintiff incorporates herein by reference Paragraphs 1 through 48 above.

25      87. Defendants McMullin and Mead committed torts of libel and slander against plaintiff by intentionally

26  and maliciously making the false, unprivileged publication as alleged above.

27      88. As a direct and proximate result of defendant's acts, conduct and omissions, plaintiff has suffered and

28  continues to suffer the special damages and general damages and is entitled to the punitive damages as alleged

1    in the Third Cause of Action.

2

ELEVENTH CAUSE OF ACTION (State Law Claims)
3    [VIOLATION OF CALIFORNIA UNRUH CIVIL RIGHTS ACT and INTENTIONAL OR
RECKLESS INFLICTION OF MENTAL DISTRESS] (Cal. Civil Code 51, 51.5)
4    (Against defendants McMullin, Braverman, Rehabilitation Center and its employees/agents,
Eviction Defense Network, Romeu, and Popp)

5    89. Plaintiff incorporates herein by reference Paragraphs 1 through 48 above.

6    90.a) Each of those defendants was, at all relevant times, in the business of rental housing, notary public,

7    nursing home, or law practice.

8    b) By aforementioned acts, those defendants intentionally and maliciously discriminated against, treated

9    differently, boycotted and blacklisted plaintiff on account of plaintiff's Japanese and Asian race, color, age, national

10    origin, primary language of Japanese, and association with disabled Mrs. Nakano who had the same these

11    characteristics, in violation of Cal. Civil Code 51 and 51.5.

12    c) Therefore, plaintiff is entitled to the statutory penalty of $25,000 for each offense according to Cal. Civil

13    Code 52(b)(2), in the total sum of $125,000.

14    91. Defendants` acts as alleged above were all intentional and malicious and done for the purpose of

15    causing plaintiff to suffer severe humiliation, intimidation, mental anguish, and emotional and physical distress.

16    Defendants` confirming and ratifying such acts was done with knowledge that plaintiff's emotional and physical

17    distress would thereby increase, and were done with a wanton and reckless disregard of the consequences to

18    plaintiff.

19    92. As a direct and proximate result of defendant's acts, conduct and omissions, plaintiff has suffered and

20    continues to suffer the special damages and general damages and is entitled to the punitive damages alleged in

21    the First and Third Causes of Action.

22

CLAIMS FOR EMERGENCY RESTRAINING ORDER AND DECLARATORY AND INJUCNCTIVE RELIEF
23    (Against defendants Rehabilitation Center and City of Los Angeles)

24    93. Plaintiff incorporates herein by reference Paragraphs 1 through 48 above.

25    94. The acts of defendants Rehabilitation Center, City of Los Angeles, and their employees and agents

26    described above were willfully and maliciously designed to and had the effect of chilling, deterring, preventing, and

27    inhibiting plaintiff from the free exercise of his rights of association, visitation, privacy and speech with Mrs.

28    Nakano under the First Amendment to the U.S. Constitution and directly interfered with the exercise of these

rights. Although Mrs. Nakano has had physical and mental disabilities, such person with disabilities has the same

and equal rights as any other persons as guaranteed by the Americans with Disabilities Act as well as Cal. Civil

Code §51.

95. Plaintiff has suffered, are suffering, and will continue to suffer severe and irreparable injury as a result

of defendants' acts, policies, practices, and customs as set forth above.

96. Unless restrained by this court, defendants will continue to violate the plaintiff's constitutional rights of

association, visitation, privacy and speech with Mrs. Nakano.

97. Plaintiff has no plain, adequate, or complete remedy at law to redress these violations of his

constitutional rights, and this suit for declaratory and injunctive relief and for damages is the only means of

securing complete and adequate remedy. No other remedy would offer plaintiff substantial and complete

protection from continuation of defendants' unlawful and unconstitutional acts, policies, practices and customs.

98. Therefore, plaintiff requests declaratory and injunctive relief as requested below.

VI. REQUEST FOR RELIEF

WHEREFORE, plaintiff requests for:

A. A declaratory judgment that the acts, policies, practices and customs of defendants Rehabilitation

Center and its employees/agents and defendants City of Los Angeles and its police officers denied plaintiff's free

exercise of First Amendment rights of association, visitation, privacy and speech with Mrs. Nakano;

B. Emergency restraining order and preliminary and permanent injunctions restraining defendants

Rehabilitation Center, City of Los Angeles, its police officers, their employees and agents, and all persons acting in

concert or cooperation with them from interfering in any manner with the free exercise of First Amendment rights of

association, visitation, privacy and speech with Mrs. Nakano by plaintiff, without subjecting plaintiff to physical

violence, threats, harassment, intimidation, arrest, imprisonment, or retaliation;

C. Special damages in the sum of $30,700 together with interest from 8-1-2018 against defendants

Eviction Defense Network, Romeu, Popp, McMullin, and Braverman, jointly and separately;

D. Additional special damages in the sum of $115,000 against defendants McMullin, Braverman, City of

Los Angels, Sgt. Cook, Doe1, and Doe2, jointly and separately;

E. Statutory penalty in the sum of $75,000 against defendants Rehabilitation Center and its

1    employees/agents, Romeu, and Popp, jointly and separately;

2         F. Statutory penalty in the sum of $100,000 against defendant McMullin;

3         G. Additional statutory penalty in the sum of $125,000 against defendants McMullin, Braverman,

4    Rehabilitation Center and its employees/agents, Eviction Defense Network, Romeu, and Popp, jointly and

5    separately;

6         H. General damages in the sum of $560,000 against all defendants, jointly and separately;

7         I. Punitive damages in the sum of $980,000 against all defendants, jointly and separately;

8         J. Costs and reasonable attorney's fees against all defendants, jointly and separately; and

9         K. Any other relief the Court may deem appropriate and just, and otherwise in the interest of justice.

10

11   VII. DEMAND FOR JURY TRIAL

12        Plaintiff hereby requests a jury trial on all issues raised in this complaint.

13

14                              VERIFICATION

15        I am the plaintiff in the foregoing complaint. I have read the complaint and know the contents thereof, and

16   the same is true of my own knowledge, except as to those matters which are therein stated on information and

17   belief, and, as to those matters, I believe it to be true.

18        I declare under penalty of perjury under the laws of the United states that the foregoing is true and correct.

19

20   Executed on   July  29,    2019 at Los Angeles, California.

21                                        Yuki Kobayashi, plaintiff in pro per

22

23

24

25

26

27

28

Complaint for damages for civil rights and other violations